UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**VICTORY L. HARTMAN,**

    **Plaintiff,**

v.                                                              Case No:  2:12-cv-13-FtM-99SPC

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION[1]**

**TO THE UNITED STATES DISTRICT COURT**

    This matter comes before the Court on Plaintiff Victory L. Hartman's Complaint seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's claim for supplemental security income (Doc. #1) filed on January 10, 2012.  The Plaintiff filed her Brief in Support of the Complaint (Doc. #16) on May 23, 2012.  The Commissioner filed a Memorandum in Support of the Commissioner's Decision (Doc. #17) on July 23, 2012.  Thus, the Motion is now ripe for review.

    The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. 405(g).

## FACTS

*Procedural History*

On November 30, 2006, Plaintiff filed a Title XVI application for Supplemental Security Income, alleging disability beginning on December 2, 2004. This claim was denied initially on March 7, 2007, and upon reconsideration on May 17, 2007. Plaintiff filed a written request for hearing on June 11, 2007. On April 21, 2009, a video hearing was held with Plaintiff appearing in Fort Myers, Florida, and the Administrative Law Judge ("ALJ") appearing and presiding in West Palm Beach, Florida. (Tr. 591). The ALJ issued an unfavorable decision on May 27, 2009. (Tr. 68). Plaintiff then filed a Request for Review and the Appeals Council vacated the hearing decision on August 18, 2009, and remanded the case to an ALJ for additional fact-finding. (Tr. 44-45). On remand, a second hearing was held on April 5, 2010, before a different ALJ.[2] (Tr. 377-92). On May 12, 2010, the ALJ issued another unfavorable decision, denying Plaintiff benefits. (Tr. 14-22). The Appeals Counsel denied Plaintiff's request for review. (Tr. 6-10). Accordingly, the ALJ's decision became the Commissioner's final decision. The Commissioner's "final decision" is subject to judicial review by this Court. See 42 U.S.C. §§ 405(g), 1383(c)(3).

*Plaintiff's History*

Plaintiff, who obtained a high school equivalency certificate (GED), was 50-years old at the time of the ALJ's May 12, 2010 decision and has past relevant work experience as a cashier and a waitress. (Tr. 22, 83, 116, 127, 131).[3] Plaintiff alleged disability beginning December 2,

---

[2] The first ALJ retired prior to the second hearing. (Tr. 379).

[3] All future references to "ALJ" will be to the second ALJ and his May 12, 2010 decision, unless otherwise indicated.

2004, due to back pain following an on-the-job injury. (Tr. 126). Plaintiff last worked on May 15, 2006. (Tr. 126).

*Medical History*[4]

An MRI of the lumbar spine, that was completed on September 17, 2003, revealed evidence of a degenerative herniated disc at the L5 to S1 level with slight impingement of the L5 nerve root and slight foraminal encroachment. An x-ray of the lumbar spine from February 4, 2005, revealed persistence of the herniated disc at L5 to S1 with the same findings. (Tr. 161). An MRI of the lumbar spine from February 4, 2005, revealed a left paracentral protrusion with mild foraminal narrowing with abutment of the exiting left L5 nerve root with two posteriorly projecting right synovial cysts. The MRI also revealed a left adnexal cystic structure. (Tr. 184).

Plaintiff has been treated by the Neurology Associates of Lee County, Inc., since March 1, 2005. (Tr. 195). She complained of back pain. Her lower extremities were noted to have a "mottled" appearance. She had decreased range of motion at the lumbar spine with diminished vibration senses below the knees. Plaintiff had diminished muscle stretch reflexes at the upper extremities, knees, and ankles. She also had claudication qualities at the back and legs. Plaintiff's doctors stated that she had not responded well to treatment. She was borderline hypertensive with diminished pulses in both of her legs. Her straight-leg raising tests were stated to be mildly positive. Plaintiff was diagnosed with lumbar spondylitic degenerative disc disease with possible disc protrusion, L5 to S1 neurocompression and atypical radiculopathy, and aorta femoral occlusive disease. (Tr. 195-96). On April 7, 2005, Plaintiff complained of lower back pain. She was wearing a back support. (Tr. 191). On June 27, 2005, Plaintiff still had lower back pain. She was released from the office and referred to a neurosurgeon for a lack of response to treatment.

---

[4] Although the Court recommends that this matter be reversed and remanded to the Commissioner on mostly procedural grounds, the Court conducted a thorough review of the record and provides the facts here for the District Court's review.

3

(Tr. 191). Plaintiff went to this office again on February 23, 2007, for back pain. She stated that the pain radiated to her left leg. The doctors still noted that she had a "mottled" appearance of her legs. Plaintiff had diminished senses below her knees with diminished muscle stretch reflexes at the biceps, triceps, brachioradialis, ankle, and knee. Plaintiff was diagnosed with hypertension and a history of lumbar spondylitic degenerative disc disease with neurocompression at the L5 to S1 level. (Tr. 188-89).

Beginning on June 22, 2005, Plaintiff was seen by Dr. Michael Lusk, a neurological surgeon. (Tr. 178). Plaintiff reported a work injury that evolved into chronic back pain that occurred on December 2, 2004. She had pain with sitting, standing, and walking. According to Dr. Lusk, Plaintiff had decreased range of motion of the back with tight hamstrings and bilateral sciatic stretch signs. Dr. Lusk noted that Plaintiff had evidence of muscle spasms. Plaintiff was diagnosed with herniated disc at the L5 to S1 level that caused mild chronic back pain; she was prescribed Vicodin and Celebrex. (Tr. 178-79). As of August 3, 2005, Plaintiff complained of lower back pain that was worsened by sitting or standing. She was noted to be depressed and was prescribed Wellbutrin. (Tr. 174). On August 29, 2005, Plaintiff reported lower back pain that radiated to her left leg. (Tr. 176). She was diagnosed with aggravation of a pre-existing degenerative disc problem. (Tr. 171). Plaintiff complained of lower back pain with tingling and burning at her legs on April 24, 2006. She was noted to have difficulty sleeping with fatigue and headaches. (Tr. 183). On April 27, 2006, Plaintiff had bilateral leg pain with sciatic stretch signs. Her blood pressure was recorded as 142/94. She had difficulty sleeping, fatigue, and headaches; she was prescribed Lortab. (Tr. 168).

Plaintiff was seen by the Family Health Center beginning on December 6, 2005, for back pain. (Tr. 212). She was noted to have tenderness of the lower back. She was diagnosed with a

backache. (Tr. 212). On April 24, 2006, Plaintiff complained of depression, crying spells, and insomnia. Her blood pressure was recorded as 140/96. Plaintiff was diagnosed with adjustment disorder with anxiety and depressed mood; she was prescribed Celexa. (Tr. 209-10). On January 4, 2007, Plaintiff's blood pressure was 148/97. She was diagnosed with alcohol disorder and anemia. (Tr. 204). As of February 6, 2007, Plaintiff's blood pressure was 154/92. She was diagnosed with hypertension, Hepatitis C, alcohol disorder, and abnormal liver enzymes; she was prescribed Metoprolol. (Tr. 201-202). Plaintiff decreased her alcohol consumption as of February 27, 2006. She was diagnosed with hypertension, Hepatitis C, and alcohol disorder. (Tr. 199).

An electrocardiogram from January 5, 2006, reported a possible inferior infarction. (Tr. 227). Another electrocardiogram from the same day revealed right atrial enlargement and counterclockwise rotation. (Tr. 225).

Plaintiff has been treated by Dr. John Geake of the Riverside Glades Medical Center since January 30, 2007. An MRI from that day revealed multilevel disc degeneration, bulging annuli at the L3 to L4, L4 to L5, and L5 to S1 levels, paracentral disc protrusion at the L5 to S1 level, and multilevel facet joint degeneration. (Tr. 291-92). A CT from November 21, 2008, reported degenerative disc disease at the C6 to C7 level with developing cervical spondylosis. (Tr. 290). As of December 3, 2008, Plaintiff was diagnosed with chronic neck pain and muscle spasms. (Tr. 290). An MRI of the right shoulder from February 12, 2009, revealed findings consistent with tendonitis of the rotator cuff. (Tr. 287). From January 5, 2009 until February 3, 2009, Plaintiff was diagnosed with chronic neck and shoulder pain. (Tr. 283-84). On March 3, 2009, Plaintiff complained of pain at her right shoulder and neck. (Tr. 286). As of April 6, 2009, she was diagnosed with chronic lower back pain and hypertension. (Tr. 296). On May 4, 2009, she was also noted to have anxiety. (Tr. 297). On June 4, 2009, Plaintiff had abdominal

tenderness with her lower back pain. (Tr. 300). Plaintiff was noted to have a cyst removal. She was diagnosed with otitis media, depression, and chronic neck and back pain. (Tr. 302). From July 6, 2009 until July 23, 2009, she maintained follow-up visits for dressing changes. (Tr. 303-15). She was still having lower back pain as of August 3, 2009. (Tr. 317). On September 1, 2009, she had chronic pain with tenderness and muscle spasms. (Tr. 319). On September 30, 2009, Plaintiff was diagnosed with chronic back pain, chronic obstructive pulmonary disease, and a history of depression. (Tr. 320-21). On October 26, 2009, Plaintiff had tenderness over her right clavicle. She was diagnosed with chronic back pain. (Tr. 323). An MRI of the lumbar spine from December 15, 2009, revealed subtle increased signal at the L5 vertebra that was highly suspicious for a subacute fracture at the L5 vertebra with bilateral moderate neuroforaminal stenosis abutting the exiting nerve roots of the L5 on a degenerative basis and a disc protrusion at the L5 to S1 level with mild central stenosis. (Tr. 338-39).

Plaintiff was treated by the Hendry Regional Medical Center as of November 1, 2009. An x-ray of the lumbar spine from that day revealed degenerative osteoarthritic changes with degenerative disc disease of the lower lumbosacral spine. (Tr. 352). On November 25, 2009, she complained of back pain. (Tr. 355). As of December 23, 2009, Plaintiff complained of anxiety and back pain; she was prescribed Soma. (Tr. 348). On January 21, 2010, Plaintiff had persistent back pain. (Tr. 346). On February 19, 2010, Plaintiff's blood pressure was 164/104. (Tr. 341).

*Evaluations Completed at the Request of the Social Security Administration*

On February 22, 2007, Plaintiff had a consultative evaluation with Dr. Bruce Borgosky on behalf of the SSA. (Tr. 229). Plaintiff was stated to have a tearful facial expression. She was also noted to have back pain. Plaintiff was diagnosed with adjustment disorder, pain disorder, and personality disorder. (Tr. 229-230).

6

On February 26, 2007, Plaintiff had a psychological evaluation with Dr. S. Nagarathinam on behalf of the SSA. (Tr. 232). She complained of lower back pain that was secondary to work-related injury while pushing grocery carts. Plaintiff was diagnosed with lumbar disc disease with radiculopathy and hypertension. (Tr. 232-33).

Two Psychiatric Review Techniques ("PRT") are found within the case file that were completed by non-examining, file-reviewing medical consultants. On March 5, 2007, Dr. Mike Dow completed a PRT. (Tr. 237). Dr. Dow checked boxes that indicated Plaintiff had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (Tr. 247).

On May 9, 2007, Dr. Timothy Foster also completed a PRT. (Tr. 259). Dr. Foster checked boxes stating that Plaintiff had mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace. (Tr. 269).

Two Residual Functional Capacity questionnaires ("RFC") were also completed by non-examining, file-reviewing medical consultants. On March 7, 2007, Mr. Bruce Woodward completed an RFC that diagnosed Plaintiff with lumbar disc disease with left side radiculopathy. (Tr. 251). According to Mr. Woodward's checked boxes, Plaintiff was only able to occasionally lift 20 pounds, frequently lift 10 pounds, and stand, walk, or sit for six hours each in an eight-work day. (Tr. 252). Mr. Woodward also stated that Plaintiff was only able to occasionally climb, balance, stoop, kneel, crouch, or crawl. (Tr. 253).

On May 17, 2007, Dr. Ronald Kline also completed an RFC that diagnosed Plaintiff with chronic back pain status post an injury in 2004 that resulted in degenerative disc disease. (Tr. 273). Dr. Kline had the same boxes checked as Mr. Woodward that indicated Plaintiff was only able to lift 20 pounds occasionally, lift 10 pounds frequently, and sit, stand, or walk for six hours

in an eight hour workday. (Tr. 274). Dr. Kline also stated that Plaintiff was only able to occasionally climb, balance, stoop, kneel, crouch, or crawl. (Tr. 275).

*Administrative Law Judge's Decision*

After considering the entire record, the ALJ found that Plaintiff had the maximum RFC to perform the full range of light work.[5] (Tr. 17, Finding. No. 4). With that RFC, the ALJ determined Plaintiff was capable of performing her past relevant work as a cashier and a waitress. (Tr. 22, Finding No. 5). As Plaintiff could perform her past relevant work, the ALJ found her not disabled. (Tr. 22, Finding No. 6).

**STANDARD OF REVIEW**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulation.[6] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

[6] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
    *Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
    *Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
    *Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
    *Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
    *Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (*per curiam*).

Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Charter, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the case. 42 U.S.C. § 405(g) (sentence four). The District Court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the District Court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Comm'r, 407 F. Supp. 2d 1297, 1299-1300

(M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. (42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505-404.1511). To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff sets forth three main issues for which she argues remand is proper: (1) Plaintiff's counsel was not allowed to examine all evidence of record; (2) Plaintiff was denied the right of cross-examination with respect to post-hearing evidence submitted by a vocational expert, resulting in a violation of the Plaintiff's due process rights; and (3) the ALJ failed to follow the Appeals Council remand order. The Court will consider each of these arguments in turn.

### 1. *Due Process*

Plaintiff argues that the ALJ did not provide Plaintiff's counsel, or Plaintiff, the opportunity to examine post-hearing evidence and did not allow Plaintiff's counsel to cross-examine the vocational expert. Plaintiff argues that this failure violated her due process rights.

On April 21, 2009, a video hearing was held with Plaintiff appearing in Fort Myers, Florida, and ALJ Bernstein appearing in West Palm Beach, FL. (Tr. 59). The ALJ issued an

unfavorable decision on May 27, 2009. (Tr. 68). Plaintiff then filed a Request for Review and the Appeals Council vacated the hearing decision on August 18, 2009. (Tr. 44-45). The Appeals Council Order stated:

> The ALJ further found that the Claimant had the residual functional capacity to perform a full range of unskilled sedentary work with occasional ability to climb, balance, stoop, kneel, crouch or crawl (Finding 4). Further the records reflects the Claimant's past relevant work as a waitress (DOT 311.477-30 and as a cashier-checker (DOT211.462-014) was light and semi-skilled in nature. The ALJ found that transferability of job skills was not material to the determination of disability because applying the Medical Vocational Rules directly support a finding of "not disabled" whether or not the Claimant has transferable job skills (Finding 8). However, the Appeals Council notes that the Claimant attained ago 50 (closely approaching advanced age) shortly before the date of the hearing decision. As of age 50, transferability is material to determining whether Medical Vocational Rule 201.14 or Rule 201.15 is more closely applicable. As there is no vocational evidence to establish whether the Claimant has transferable skills, the Appeals Council finds that additional evaluation and vocational evidence are needed.
>
> Upon remand the Administrative Law Judge will:
>
> - Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912-913). The additional evidence may include, if warranted and available, consultative examinations and medical source statements about what the claimant can still do despite her impairments.
>
> - Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 416.945 and Social Security Ruling 96-8p).
>
> - Obtain evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its

> companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).
> (Tr. 44-45).

A second hearing was held, pursuant to the Appeals Council remand order, on April 5, 2010. Prior to this hearing, the newly-assigned ALJ Determan requested vocational interrogatories from a vocational expert. (Tr. 68, 324). The VE completed the interrogatories, signed her name, dated it December 10, 2009, and returned the interrogatories to the ALJ. (Tr. 324-38). The VE stated that Plaintiff's past relevant work consisted of a cashier/checker and a waitress. (Tr. 325). In response to the ALJ's hypothetical question which encompassed an individual with an RFC to perform the full range of "light work," the VE stated that a person of the same age, education, and past relevant work as Plaintiff could perform Plaintiff's past work as Plaintiff performed it and as those jobs are generally performed in the national economy. (Tr. 326).

Plaintiff's counsel now argues that a copy of the VE's interrogatories was never provided to him prior to the April 2010 hearing, which was scheduled pursuant to the remand from the Appeals Council. Plaintiff's counsel objected to the vocational interrogatories at the hearing asserting he had not been given an opportunity to review them prior to the April 2010 hearing. Specifically, the attorney stated the following to the ALJ on the record:

> I have to object to one exhibit. I think it's numbered Exhibit 15F, which were interrogatories sent off to a Vocational Expert Salek, and we did not get a copy of that or a notice that that was going to be done until March, until we received the file, and I did not have an opportunity to object at that time. Had I had an opportunity, I would have objected because the Appeals Council told the prior ALJ to consider a Vocational Expert, but the hypothetical that the ALJ sent was for light. The ALJ found in his own decision that Claimant was limited to sedentary. I think it was a limited range of sedentary, so I would have probably either objected or at least asked for an opportunity to cross-examine that Vocational Expert.
> (Tr. 379-80).

Plaintiff's counsel's objection was not addressed at the hearing or in the ALJ's decision. The VE did not appear and testify at the April 2010 hearing.

It is unclear from the record and the briefing in this matter whether Plaintiff's counsel did in fact receive the VE interrogatories – or at least notice of them – one month prior to the hearing. It appears from Plaintiff's Brief that Counsel did not become aware of their existence in the file until the date of the hearing. (Doc. #16, p. 13). But his statements on the record at the hearing seem to indicate that he at least received notice of the VE interrogatories in March 2010. Lending further to the confusion, in its Brief, the Defendant states both that Plaintiff's counsel received the VE interrogatories in March 2010 when he received Plaintiff's claims file in preparation for the hearing (Doc. #17, p. 7) and that "[i]f the Commissioner did not send Plaintiff's counsel the VE's responses, the Commissioner regrets the oversight." (Doc. #17, p. 6 n.6).

The Agency's Hearings, Appeals, and Litigation Law Manual (HALLEX) notes that after the VE responds to the initial transmission of interrogatories, a copy of the response will be sent to the claimant and representative and will be included in the record as an Exhibit. See HALLEX I-2-5-57, 1994 WL 637385, at C1. Defendant does not definitely state whether the VE's responses were in fact sent to Plaintiff's counsel. Rather, the Commissioner argues that the Plaintiff's contentions are without merit because the ALJ's decision does not reflect that he relied on the VE's responses in finding Plaintiff could perform her past relevant work, but instead relied on other evidence of record and other resources, i.e., the Dictionary of Occupational Titles. (Tr. 22).

It is unclear from the record in this case whether Plaintiff's counsel or Plaintiff were given the opportunity to review the VE responses prior to the hearing. It is undisputed though

that Plaintiff's counsel was not given the opportunity to cross-examine the VE regarding her responses.  Therefore, the undersigned recommends that the matter be remanded to the ALJ in order to afford Plaintiff's counsel this opportunity in deference to Plaintiff's due process rights.

### 2. *Whether the ALJ followed the Appeals Council remand order*

In the original decision, dated May 27, 2009, the ALJ found Plaintiff was restricted to an unskilled sedentary RFC with only occasional ability to climb, balance, stoop, kneel, crouch or crawl. (Tr. 59-68). Upon request for review by the Appeals Council, it vacated the original decision and remanded the case to the ALJ with the following instructions:

- Obtain evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41.  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 44-45).

Plaintiff argues that the ALJ failed to comply with the Appeals Council remand order, by failing to elicit a vocational expert to evaluate the transferability of job skills given the Plaintiff's past relevant light work and closely approaching advanced age, given the unskilled limited sedentary RFC determined by the ALJ in the May 2009 unfavorable decision.  In not doing so, the Plaintiff argues that the ALJ violated the Plaintiff's due process rights by not complying with the Appeals Council order.  Plaintiff also points to the fact that the RFC was changed by the ALJ in the May 2010 decision as the ALJ in the 2009 decision determined that Plaintiff had an RFC for unskilled

sedentary work and the ALJ in the 2010 decision determined that Plaintiff could perform the full range of light work.

"The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b). The Plaintiff's argument with regard to the fact that Plaintiff's RFC changed from sedentary work as set forth by the first ALJ to light work by the second ALJ is unpersuasive. The Appeals Council directed the ALJ to consider Plaintiff's "*maximum* residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." (Tr. 44) (emphasis added). In this case, the ALJ gave further consideration to Plaintiff's RFC and discussed the specific evidence in the record to support his RFC assessment over five pages in his opinion. (Tr. 17-22). Plaintiff has cited no support for the contention that the RFC assessment set forth in the first ALJ opinion may not be changed.

With regard to Plaintiff's argument that the ALJ failed to elicit a vocational expert to evaluate the transferability of job skills given the Plaintiff's past relevant work and closely approaching advanced age, the Appeals Council did not order the ALJ to go to step five of the sequential evaluation process. (Tr. 44-47). Indeed, the Appeals Council merely ordered the ALJ to "[o]btain evidence from a [VE] to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41." (Tr. 45). Social Security Ruling 82-41 only applies if a claimant proves she cannot perform past relevant work. See SSR 82-41, 1982 WL 31389, at *1 (1982). Even so, the ALJ did use a VE in this case as required by the Appeals Council order when he supplied the interrogatories to the VE. Therefore, the undersigned recommends that the ALJ followed the Appeals Council remand

order.  But as the Court recommends above, it is unclear whether Plaintiff's counsel was provided the interrogatories and Plaintiff's counsel was not afforded the opportunity to cross-examine regarding the VE interrogatories.  Therefore, the matter should be remanded.

Accordingly, it is now

**RECOMMENDED:**

The decision of the Commissioner be **REVERSED and REMANDED** to the Commissioner to allow Plaintiff's counsel to cross examine the vocational expert.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 10th day of September, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record